**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

**ALLEN WILEY III** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 5:24-CV-00197-JHM**

**K.D.O.C., *et al*,** **DEFENDANTS**

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion by Defendants[1] Sergeant Coty Cannon, Correctional Officer Justin Horne, Lieutenant Delvin Nielsen, Captain Darren Larue, and Deputy Warden Jacob Bruce for summary judgment pursuant to Federal Rule of Civil Procedure 56. (DN 82). Plaintiff Allen Wiley III filed a response. (DN 89). Defendants did not file a reply. Accordingly, this matter stands ripe for decision.

## I.

At all times relevant to the events discussed in this Memorandum Opinion and Order, Plaintiff was incarcerated at the Kentucky State Penitentiary ("KSP"). (DN 20, PageID #: 105). Plaintiff filed the instant *pro se* action under 42 U.S.C. § 1983 alleging violations of his constitutional rights during his incarceration at KSP. (DN 1). Plaintiff then filed an amended complaint on a Court-supplied form. (DN 8). The Court then allowed Plaintiff to amend his compliant to add additional relief and directed the filing to be attached as a supplement to the amended complaint. (DN 15). Plaintiff submitted an additional filing, which the Court construed as another supplement to the amended complaint. (DN 18).

[1] The Docket and Plaintiff's papers refer to Defendants Horne and Nielsen as "Horn" and "Neilson" respectively. However, Defendants' papers refer to the Defendants as "Horne" and "Nielsen." For the avoidance of doubt, the Court shall refer to them as such throughout this Memorandum Opinion and Order.

Subsequent to the filing of the amended complaint and supplements, the Court conducted a review of the filings pursuant to 28 U.S.C. § 1915A. (DN 20). Therein, the Court determined that an Eighth Amendment excessive force claim against Defendants Canon, Horne, and Nielsen could proceed. (*Id.*, PageID #: 108). Plaintiff then filed a document which the Court construed as a motion to reconsider the Court's prior Memorandum Opinion and Order. (DN 27). After reviewing the motion to reconsider, the Court allowed an Eighth Amendment failure to protect claim against Defendants Bruce and Larue to proceed. (DN 28, PageID #: 141). Defendants have denied all claims of liability against them.

**II.**

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-movant must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]"

Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and a party's "status as a *pro se* litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

## III.

### A. Plaintiff's Allegations

Plaintiff alleges that on December 4, 2024, he was denied dinner and asked an unidentified officer to bring him a sack lunch. (DN 8, PageID #: 35). Plaintiff alleges that Defendant Cannon then yelled profanity at him while ordering him to come down the steps and face the brick wall outside five cell house. (*Id.*). Plaintiff states that he was placed in restraints while Defendant Horne and other unidentified officers pointed tasers at him. (*Id.*). He maintains that Defendants Cannon and Horne lifted his arms and that Defendant Horne placed a taser against the back of his right shoulder while escorting him to the restrictive housing unit in three cell house. (*Id.*). Plaintiff

further alleges that, while he was being escorted down the walkway, Defendant Nielsen repeatedly "dry stunned" his lower back and left side, called him derogatory names, and told him to be quiet. (*Id.*). Plaintiff states that, after they entered three cell house, Defendants Cannon and Horne slammed the left side of his head and face into the strip cage. (DN 8, PageID #: 35–36).

Plaintiff further alleges that, once he was inside the strip cage, Defendant Nielsen ordered him to face the wall, raised a can of pepper spray toward his face, and threatened him. (DN 8, PageID #: 36). Plaintiff alleges that the incident was captured on video and that his letter to Warden Plappert was forwarded to Defendants Bruce and Larue for investigation.[2] (*Id.*). He alleges that those officials quickly covered up the incident and had a history of complaints of excessive force against them. (*Id.*).

Plaintiff also alleges that KSP officials continued to hold him in solitary confinement to cover up the force used against him. (*Id.*, PageID #: 37). He maintains that, whenever he was close to completing his confinement, Defendant Nielsen "tries to give [Plaintiff] a new write-up from the incident . . . [where] illegal excessive force was used against him[.]" (*Id.*). Plaintiff asserts that the Department of Corrections knew what had happened to him and that he had been returned to KSP after prevailing in a settlement conference related to a separate lawsuit. (*Id.*).

---

[2] While the original letter is not in the record, a letter acknowledging that Warden Plappert had received the letter is in the record. (DN 1-1, PageID #: 11). Further, an Internal Affairs Office Report provides:

> On December 5, 2024, Warden Laura Plappert sent Internal Affairs Captain Darren Larue a letter she had received from Inmate Wiley, Allen #231525 making several allegations that staff used excessive force against him on December 4th, 2024. The allegations made are as follows: Allegation #1- Inmate Wiley alleges that Lieutenant Delvin [Nielsen], Sergeant Coty Cannon, and Officer Justin Horne "shot" him "numerous" times with their issued Taser-7 devices while being escorted to 3 cell house restrictive housing unit. Allegation #2- Inmate Wiley alleges that Lieutenant Nielsen, Sergeant Cannon, and Officer Horne "slammed" the left side of his face into the 3 cell house strip cages causing his face to have "swelled up." Allegation #3- Inmate Wiley alleges that the use of a Taser-7 device was "never mentioned" and "covered up."

(DN 82-2, PageID #: 402).

Plaintiff contends that Defendants Bruce and Larue were responsible for investigating the incident and taking disciplinary action against the officers, including having them arrested and discharged from employment. (*Id.*, PageID #: 38). He alleges that Warden Laura Plappert placed those officials on notice and instructed them to investigate, but they failed to take the necessary action. (*Id.*). Plaintiff maintains that, even if the assault was minor, there was no justification for the force and the officers intended to cause him harm. (*Id.*).

In his supplement requesting additional relief, Plaintiff alleges that Defendant Bruce ignored video evidence of excessive force and that Plaintiff had been confined for thirty days without just cause, a hearing, or an investigation into what he had done wrong. (DN 8-2, PageID #: 69). Plaintiff maintains that he submitted to restraints as ordered and that the video shows there was no need to use any force. (*Id.*, PageID #: 70).

In a further supplement, Plaintiff reiterates that Defendants Bruce and Larue were placed on notice but failed to correct the officers' allegedly wrongful acts. (DN 8-3, PageID #: 112). He also asserts that prison officials improperly denied an attached grievance and prevented him from proceeding through the grievance process. (*Id.*, PageID #: 114). The attached grievance alleges that Defendants Bruce and Larue denied him legal copies and access to the law library and that the institutional lockdown prevented him from preparing responses to anticipated dismissal motions. (*Id.*, PageID #: 119). The attached rejection form identifies the reason for rejection as "Grieving on behalf of another inmate(s)," and "Failure to comply with guidelines outlined in CPP 14.6," requests a rewrite, and states that Plaintiff may raise his concerns with the Warden or Ombudsman. (*Id.*, PageID #: 117).

Plaintiff subsequently sought reconsideration of the dismissal of Defendants Bruce and Larue, arguing that supervisory officials could be liable for failing to remedy known violations,

creating a policy or custom permitting unconstitutional conduct, failing to supervise subordinates, or disregarding information that unconstitutional practices were occurring. (DN 8-4, PageID #: 143). Plaintiff maintains that Warden Plappert's response to his letter shows that the matter was forwarded to Defendants Bruce and Larue and that both failed to remedy the wrong. (*Id.*, PageID #: 144). He further alleges that the officers acted with racist motives and used force to cause serious harm rather than to restore order in good faith. (*Id.*).

**B. Defendants' Motion for Summary Judgment**

Defendants move for summary judgment, arguing that the force used by Defendants was used in good faith to maintain or restore order, that Defendants Bruce and Larue lacked knowledge of a substantial risk of serious harm, that all Defendants are entitled to qualified immunity, and that Plaintiff failed to exhaust available administrative remedies. (DN 82, PageID #: 379). Defendants also note that Plaintiff previously stated in his filing entitled "Disputed Facts" that Defendants Cannon and Horne were entitled to dismissal and could not be pursued for excessive force. (*Id.*; DN 76, PageID #: 365).

Defendants contend that inmates leaving the chow hall on December 4, 2024, were ordered to descend the stairs with their hands on their heads, but Plaintiff came down with his hands near his pockets. (*Id.*, PageID #: 380). Defendants state that Cannon and Horne directed Plaintiff out of line and against the wall, where one officer held a taser against his right shoulder while the other handcuffed him behind his back. (*Id.*). They maintain that the taser was displayed but not activated. (*Id.*). The officers then escorted Plaintiff toward the restrictive housing unit. (*Id.*, PageID #: 380–381).

Defendants contend that Plaintiff became aggressive during the escort, pulled away from the officers, and repeatedly changed his walking speed. (*Id.*, PageID #: 381). They argue that

Plaintiff pulled away as the group approached three cell house, twisting Defendant Cannon's foot and causing him to stop. (*Id.*). Defendants maintain that Defendant Nielsen heard Plaintiff yelling, observed resistance to the escort, and approached to assist after ordering Plaintiff to stop resisting. (*Id.*). Defendants contend that Plaintiff turned aggressively toward Defendant Nielsen as though he intended to spit on him, despite a warning not to do so. (*Id.*).

Defendants state that Defendant Nielsen activated his taser in drive-stun mode three times, delivering discharges lasting 0.49, 0.68, and 0.39 seconds. (*Id.*, PageID #: 381–383). The Internal Affairs report recorded those three activations and provides that the tasers assigned to Defendants Cannon and Horne were not discharged during the incident. (DN 82-2, PageID #: 403). The report further explains that the last four pulses during the first activation and the last three pulses during the second activation discharged into open air, while the third activation remained in contact with a load consistent with skin and fat tissue for its entire cycle. (*Id.*).

Defendants contend that Plaintiff continued resisting, cursing, and threatening Defendant Nielsen as they approached and entered the cell house. (DN 82, PageID #: 382). They maintain that Plaintiff moved toward the strip cage while pushing and jerking away, requiring Defendants Cannon and Horne to follow his movement and press him against the cage to maintain their grip. (*Id.*). Defendants contend that Defendant Nielsen feared that Plaintiff would break free and headbutt an officer, and the third drive stun was intended to regain control. (*Id.*, PageID #: 382–383).

Defendants rely on the Internal Affairs investigation, which includes interviews with the officers involved, a review of surveillance footage, and an analysis of the taser data. (DN 82-2, PageID #: 402–404). The report reflects that Defendant Nielsen initially recalled two activations, but investigators confronted him with data showing three activations and footage of him reaching

around Defendant Cannon to administer a drive stun. (*Id.*, PageID #: 404). Defendant Nielsen agreed that the footage showed that action but stated that he did not recall administering three drive stuns and believed Plaintiff may have been trying to "wiggle free" from Defendants Cannon and Horne. (*Id.*). The report also records Defendant Larue's observation during Defendant Nielsen's interview that Plaintiff appeared to be relatively controlled by the escorting officers and Defendant Larue's questions about why additional force was necessary. (*Id.*, PageID #: 403). Although Cannon reported that Plaintiff acted as if he would spit toward Nielsen, Horne told investigators that he did not see Plaintiff turn toward anyone as if to spit. (*Id.*, PageID #: 403–404).

Defendants state that Plaintiff continued yelling, cursing, and refusing to identify himself after being secured in the strip cage. (DN 82, PageID #: 383). They maintain that Captain Jason Denny de-escalated the situation and persuaded Plaintiff to cooperate with the strip search so that he could be processed into the unit. (*Id.*). Defendants further rely on the examination by Registered Nurse Monica Saxon, who recorded Plaintiff's report that he had been tased three times and that his wrists and face hurt. (DN 82-2, PageID #: 404). Saxon noted, "No injuries noted on face," and described the left wrist as "slightly red only, no injury noted." (*Id.*). Defendants argue that the examination disclosed no injury requiring further treatment. (DN 82, PageID #: 388).

Defendants contend that Plaintiff's resistance, refusal to obey orders, and threatening behavior created a need for force and gave the officers reason to perceive a threat of assault. (*Id.*, PageID #: 387–388). They argue that the officers tempered their response by issuing verbal commands before escalating to three brief drive stuns and by maintaining their hold on Plaintiff until he could be secured in the strip cage. (*Id.*, PageID #: 389–390). Defendants maintain that pressing Plaintiff against the cage was a response to his movements and the officers' effort to retain

control, and that no reasonable jury could find the force was used maliciously or sadistically to inflict pain. (*Id.*, PageID #: 389–392).

As to Defendants Bruce and Larue, Defendants argue that discovery produced no evidence of a preexisting propensity for excessive force that would have alerted them to a substantial risk of serious harm to Plaintiff. (*Id.*, PageID #: 392–393). They state that a search identified three prior Internal Affairs investigations involving Defendant Horne, but all three complaints were deemed unfounded. (*Id.*, PageID #: 393). Defendant Bruce states in his affidavit that he had no knowledge, before December 4, 2024, of an alleged propensity for excessive force by Defendants Cannon, Horne, or Nielsen and did not knowingly disregard a risk of harm to Plaintiff. (DN 82-9, PageID #: 457). Defendant Larue makes the same representations in his submitted affidavit. (*Id.*, PageID #: 458).

Alternatively, Defendants argue that qualified immunity protects their conduct because no clearly established law would have informed Defendant Cannon and Horne that the restraint used to maintain control, or Defendant Nielsen that the brief drive stuns used in response to continued resistance and threats, violated Plaintiff's rights. (DN 82, PageID #: 396). They make the same argument for Defendants Bruce and Larue because, according to Defendants, neither an identifiable risk of harm nor knowledge of such a risk existed. (*Id.*).

Finally, Defendants contend that Plaintiff did not exhaust his administrative remedies under Kentucky Corrections Policies and Procedures ("CPP") 14.6. (*Id.*, PageID #: 397–398). They assert that the policy required a written grievance within five working days identifying the issue and persons involved, followed by informal resolution, Grievance Committee review, an appeal to the Warden, and a final appeal to the Commissioner. (*Id.*, PageID #: 397). Defendants maintain that Plaintiff completed none of those steps and instead sent only a letter to Warden Plappert, which

was referred to Internal Affairs for investigation. (*Id.*, PageID #: 398). They therefore argue that the Prison Litigation Reform Act, 42 U.S.C. § 1997, ("PLRA") bars this action. (*Id.*).

**C. Plaintiff's Response**

In response, Plaintiff argues that discovery establishes liability against Defendants Bruce, Larue, and Nielsen. (DN 89, PageID #: 504). Plaintiff maintains that supervisory liability may arise from direct participation, failure to remedy a reported violation, creation of a policy or custom permitting unconstitutional acts, grossly negligent supervision, or deliberate indifference to information that unconstitutional acts were occurring. (*Id.*, PageID #: 504–505). He contends that Defendants Bruce and Larue failed to act on information about unlawful conduct, failed to remedy the December 4 incident, and failed to supervise the officers involved. (*Id.*, PageID #: 505–506).

Plaintiff identifies other lawsuits involving alleged uses of force at KSP, including claims against Defendant Horne and claims concerning conduct by other officers, which he characterizes as evidence of a pattern. (*Id.*, PageID #: 506). Plaintiff contends that Defendants Bruce and Larue permitted Defendant Nielsen to remain employed even though the investigation of Plaintiff's incident showed an unjustified use of the taser in violation of institutional force policies. (*Id.*, PageID #: 507–508).

Plaintiff further alleges that Defendant Nielsen subsequently assaulted Karim Zein, who pursued a separate excessive-force action, and that Defendants Bruce and Larue had Defendant Nielsen discharged following that incident. (*Id.*, PageID #: 508). Plaintiff argues that this contradicts their discovery responses concerning their ability to take action against officers. (*Id.*). He again relies on Plappert's letter as evidence that Defendants Bruce and Larue were placed on notice but failed to act, and he argues that neither is entitled to dismissal or qualified immunity. (*Id.*).

As to Defendant Nielsen, Plaintiff argues that the video demonstrates there was no legitimate reason to use force against a handcuffed prisoner. (*Id.*, PageID #: 509). He relies on the video, taser records, and investigative reports as evidence that Defendant Nielsen violated the applicable force policy and is not entitled to qualified immunity. (*Id.*). By contrast, Plaintiff expressly states that discovery shows Defendants Cannon and Horne did not use force and that they "are entitled to dismissal." (*Id.*, PageID #: 510).

Plaintiff also raises *res judicata* and collateral estoppel arguments, contending that defense counsel did not provide the necessary records with the initial responsive filing to establish a preclusion bar. (*Id.*, PageID #: 510). He maintains that dismissal is improper where evidence in the record supports his claims. (*Id.*, PageID #: 511).

In response to the exhaustion defense, Plaintiff argues that CPP 14.6 designates disciplinary matters as non-grievable. (*Id.*). He maintains that his letter to Warden Plappert placed Defendants Bruce and Larue on notice and that pursuing the instant action was the proper course because the underlying issue was non-grievable. (*Id.*). Plaintiff specifically points to CPP 14.6 § II(C)(4) which lists as non-grievable an "incident where the grievant received a disciplinary report" and directs an inmate who receives such a report after filing a grievance to use the adjustment process. (DN 89-1, PageID #: 514). Plaintiff requests that the Court deny Defendants' motion for summary judgment. (DN 89, PageID #: 512).

**IV.**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court, interpreting § 1997e, has expressly stated: "There is

no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Failure to exhaust administrative remedies under the PLRA is an affirmative defense for which defendants bear the burden of proof. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012). Accordingly, summary judgment may be granted "'only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion.'" *Id*. at 456 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)). Because defendants also bear the burden of persuasion for this issue at trial, their "initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Id*. at 455-56 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). The burden of defendants asserting the affirmative defense of exhaustion is satisfied where the defendants produce an administrative policy that governs the filing of grievances and shows that the plaintiff failed to fully exhaust his administrative remedies pursuant to the policy. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

In order "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules', rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citation omitted) (quoting *Woodford*, 548 U.S. at 88). To exhaust a claim, a prisoner must proceed through all of the steps of a prison's administrative process, *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999), and failure to "properly" exhaust bars suit in federal court. *Woodford*, 548 U.S. at 93. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id*. at 90-91. But an inmate

need only exhaust those remedies that are "available"; if an administrative remedy "is not capable of use to obtain relief," then the PLRA will not act as a barrier to suit. *Ross v. Blake*, 578 U.S. 632, 642 (2016).

Defendants argue that Plaintiff did not properly exhaust administrative remedies in compliance with the PLRA. (DN 82, PageID #: 396-98). In contrast, Plaintiff argues that his letter to the Warden served to put Defendants on notice of their alleged unlawful acts, and that the relevant provision of the CPP provides that "all issue[s] that are disciplinary are non-grieveable." (DN 89, PageID #: 511).

In this instance, the Court agrees that Plaintiff has not properly exhausted his administrative remedies in compliance with the PLRA. Plaintiff has failed to file any grievance related to the events described in his amended complaint and/or supplements. In fact, the only grievance submitted by Plaintiff that is in the record describes denial of access to KSP's law library. (DN 8-3, PageID #: 119). Plaintiff argues that he did not fail to exhaust administrative remedies because CPP § II(C)(4) provides that disciplinary procedures are non-grieveable issues. (DN 89, PageID #: 511; DN 82-10, PageID #: 460). Further, Plaintiff contends that his letter to Warden Plappert sufficiently satisfies the requirements of the PLRA. (*Id*., PageID #: 511; DN 1-1, PageID #: 10-11).

The CPP grievance process contains multiple required steps, including: (1) filing the grievance; (2) an informal resolution stage; (3) review by the Grievance Committee; (4) appeal to the Warden; and (5) final appeal to the Commissioner of the Department of Corrections. (DN 82-10, PageID #: 466-73). In this instance, there is no dispute of material fact that Plaintiff did not file a grievance related to the conduct that occurred to him on December 4. Instead, Plaintiff seems to have skipped to the fourth step of appealing to the Warden; albeit via letter.

Thus, Plaintiff has failed to exhaust his administrative remedies pursuant to KSP's grievance process.

Plaintiff argues that conduct related to disciplinary procedures is non-grievable; thus, the PLRA has been satisfied. This argument misses the mark because Plaintiff has not alleged that any of the claims of this lawsuit accrued as a result of a formal disciplinary action against him, in fact, all of Plaintiff's claims flow from the events of December 4 and not the subsequent disciplinary action against him. *See Brock-Butler v. Parker*, No. 5:14-CV-000210-TBR, 2016 U.S. Dist. LEXIS 87244, at *9 (W.D. Ky. July 6, 2016) (internal citations and quotations omitted) (holding that "an issue is non-grievable under CPP § 14.6(II)(C)(4) only where it is the result of a formal disciplinary action"). Just as in *Brock-Butler*, Plaintiff alleges that the correctional officers used excessive force. However, Plaintiff points to nothing in the record that this conduct "happened as a result of a formal disciplinary action against him." *Id.* at *10. Under the CPP, both the excessive force claim and the failure to protect claim should have been grieved under CPP § 14.6(II)(B)(4) or (5). As there is no record of the grievance procedure being following properly, the Court must grant summary judgment on behalf of Defendants.

**V.**

For the reasons set forth above, **IT IS ORDERED** that Defendants' motion for summary judgment (DN 82) is **GRANTED**. The Court will enter a separate judgment consistent with this Memorandum Opinion and Order.

Date: October 30, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
Counsel of record
4414.016